**RICHMOND et al. v. CHAMPAGNE'S BAKERY.**

No. 3308.

Court of Civil Appeals of Texas. Beaumont.
June 9, 1938.

Rehearing Denied June 15, 1938.

Elton Cruse, of Beaumont, for appellant.

Lightfoot, Robertson & Gano, of Fort Worth, and Barnes & Barnes, of Beaumont, for appellee.

WALKER, Chief Justice.

About 7:30 o'clock of the morning of November 7, 1936, appellants, Jake Richmond and his two minor daughters, Marie and Elnora, were riding together in a Ford car, driven by Elnora, south on Ninth Street in the City of Port Arthur, Texas. At the intersection of Ninth Street and Augusta Avenue, in the City of Port Arthur, they were run into by a bakery truck; their Ford car was damaged and they suffered personal injuries. This suit was brought by appellants against appellee, U. C. Champagne, for damages for the injuries suffered by them in the collision. They alleged that appellee was a resident citizen of Jefferson County, and at the time of the collision was conducting "an unincorporated bakery business with its principal place of business at 1217 Sixteenth Street in Port Arthur"; they also alleged that the truck that collided with their Ford car belonged to appellee and, at the time of the collision, was being operated by him in the course of his business; the facts and circumstances of the collision, the particulars in which appellee was guilty of negligence, and the proximate relation of the alleged negligent acts to the collision were fully plead. Appellee answered by demurrers, general and special, general denial, special pleas of contributory negligence, and by way of cross action:

"And now this defendant, U. C. Champagne, becoming the actor over against

these plaintiffs, and each of them, states that they and each of them were operating the car and that the others were engaged in the operation of the car as parties joined in a common enterprise, and that said operator of said car was acting as the agent of the other two."

Here followed specific acts charged against appellants:

"Each of which constituted negligence, and each of which constituted a direct and proximate cause of the collision in question. * * *

"That each of said acts and omissions was a direct and proximate cause of the collision in question and the damages sustained by U. C. Champagne and his car, and defendant alleges further that each of said acts and omissions constitutes negligence and each was a sole proximate cause of the collision and damages, if any, sustained by plaintiffs.

"B. That each of said acts of negligence on the part of said plaintiffs was a direct and proximate cause of the collision and damages sustained by the defendant; that the defendant sustained damages to his car because of said negligent acts, and that the market value of his car immediately after the collision was $600.00 less than it was immediately before the collision, and that by virtue of said collision, the fair market value in Port Arthur, Texas, of the car was immediately reduced in the sum of $600.00; that it would take that amount of money and did take that amount of money, as a direct and proximate result of said negligent acts on the part of the plaintiffs, in labor and material and parts to repair the car and place it in as good a condition as it was prior to the collision.

"That though often requested, plaintiffs have refused to pay said sum of $600.00, or any part thereof, to defendant's damage in the sum of $600.00.

"Wherefore, premises considered, defendant prays that plaintiffs take nothing by their suit and that this defendant go hence without day, and in addition thereto, this defendant prays that he be allowed to recover over against the plaintiffs, jointly and severally, the sum of Six Hundred Dollars $600.00 for damages sustained in the premises. And in duty bound will this defendant ever pray."

The trial was to a jury, and on conclusion of the evidence appellee filed the following motion, which was granted by the trial court:

"Now comes the defendant, Champagne's Bakery, in the above entitled and numbered cause, after all the evidence had been introduced in the trial of this case, and before the Court gave its Charge to the Jury, and before the argument of counsel was heard, and moves the Court to give the Jury the following instruction;"

On the verdict, judgment was entered against appellants, from which they have prosecuted their appeal to this court.

■ Appellee has filed his motion, praying that the appeal be dismissed. Final judgment was rendered on the 25th day of May, 1937; appellants filed their original motion for new trial on the 31st day of May, 1937; on the 17th day of June, 1937, "on leave of the court," they filed their amended motion for a new trial. Except for the first paragraph of the amended motion: "Comes now the plaintiff in the above cause, individually and as next friend for his two minor children Elnora Richmond and Marie Richmond, and with leave of the Court first had and obtained filing this Plaintiff's First Amended Motion for a New Trial for the same shows:" it was, verbatim, the same as the original motion. The amended motion was duly filed, duly acted upon, duly overruled, and appellants duly reserved their exceptions to the ruling of the court, and duly gave their notice of appeal—all done within the time and manner prescribed by law. The only point presented by appellee's motion, urged for the first time in his motion to dismiss, is that the motion filed as an amended motion is not an amended motion. This contention is overruled. The losing party is required by law to file his motion for new trial within ten days after the judgment is rendered, and, by leave of the court, an amended motion may be filed within twenty days after the filing of the original motion. In Dallas Storage & Warehouse Co. v. Taylor, 124 Tex. 315, 77 S.W.2d 1031, our Supreme Court gave a careful review of the law regulating the filing of motions for new trial. In that case it was said (page 1034):

"A strict construction must be given to that part of subdivision 29 [article 2092] which relates to the time for the filing of an amended motion for new trial. Trial courts could in large measure defeat the purpose of the amendment of subdivision 28 by permitting amended motions to be filed after the expiration of the time fixed by the statute for their filing. Subdivision 29 in exact and particular language defines the

conditions upon which a motion for new trial may be amended. They are: First, that leave of court must be obtained; second, that it can be amended only before it is acted upon; and, third, that the amendment must be made within 20 days after the filing of the motion. Only on these terms is amendment permitted. We therefore construe subdivision 29 to mean, since the amendment of subdivision 28, that an amended motion for new trial must be filed within 20 days after the original motion is filed, and that no amended motion may be filed after the expiration of that period."

The law does not prescribe the contents of the amended motion. The grace period allowed—the right to file an amended motion—is to give the losing party time to prepare his appeal; to investigate the facts and the law in order to present to the trial court his grounds of error. When he has made his investigation, the attorney on his professional honor is bound to deal fairly with his trial judge, and not to assign errors that have no basis in the record. He has filed his original motion; after making his investigations, if no new ground is discovered, then as an ethical attorney he should not "manufacture" new grounds, but, as did appellants' attorney in this case, refile and reassign only his original grounds. Appellants should not be punished by having the appeal dismissed on the ground that their attorney, in refiling the grounds of their original motion, and only the grounds of their original motion, did the only thing that, as an honorable practitioner, he could do. The motion to dismiss is overruled.

■ On the theory of the instructed verdict, appellee makes the following statement:

"In this case Your Honors are not concerned with the question of the collision nor with the question of the amount of damages. Your Honors are concerned only with the question of whether a prima facie case of ownership, of agency, and of an employee operating in the course of his employment, was made out by the evidence."

We have examined the facts, and, as stated by appellee, the only issue presented by the appeal is the sufficiency of the evidence to identify appellee as the owner and operator of the truck that collided with appellants' Ford car. The evidence satisfactorily raised the issues of negligence plead against the driver of the truck; and the proximate relation of the alleged negligence to the collision; the nature and extent of appellants' damages was a fact question for the jury. Under the evidence they were not, as a matter of law, guilty of contributory negligence.

The facts on the issue as stated by appellee were as follows:

First. Appellant, Miss Elnora Richmond, testified:

"Q. Miss Richmond, I will ask you whether or not you were operating the Ford car in which your father and sister were riding at the time of a collision occurring between it and a truck close to the intersection of 9th St. and Augusta Avenue in Port Arthur about November 7, 1936? A. Yes, sir, I was.

"Q. Now after you saw that car, I will ask you first what kind of car or vehicle it was that later came into collision with you? A. It was a truck. I don't know what kind of truck it was. I don't know what model or anything.

"Q. Did it have anything printed on it, Miss Richmond, the truck, or painted on it? A. Yes, sir, it had Champagne Bakery on the side of it, printed on the side."

Second. Mr. J. E. Hamilton, a son-in-law of appellant, Jake Richmond, testified:

"Q. Mr. Hamilton, I will ask you when was the first time that you saw and talked to Mr. U. C. Champagne after 8 o'clock Saturday morning, November 7, 1936. A. Well, it was about 9:30, I suppose, somewhere between 9 and 10 o'clock on that morning, and it was over at the bakery shop.

"Q. You talked to him over at his bakery shop? A. Yes, sir.

"Q. Now, Mr. Hamilton, just relate the conversation that occurred between you and Mr. Champagne at that time. * * *

"Q. Mr. Hamilton, I will ask you what, if anything, Mr. Champagne said to you about what the driver of that truck was doing? A. Well, he didn't say just what the driver was doing and I didn't ask him.

"Q. Did you, in the conversation with Mr. Champagne, ask him where the driver was, Mr. Hamilton? A. I did.

"Q. Mr. Hamilton, what did Mr. Champagne tell you that the driver was doing? A. He said he was out on the route."

Third. Appellant Richmond testified:

"Q. Mr. Richmond, I will ask you to state just how soon after the collision about which we have been talking it was before

you saw the driver of this bakery truck? A. Something like about three or four minutes.

"Q. Now at that time, where was the driver of that truck and just briefly, what was he doing? A. Well, when I first seen him he was coming up 9th St. in a run. He run up there about 10 foot this side of the truck and stopped and asked me for something to bandage his arm up so that he could go ahead and finish the deliveries."

The evidence of this witness and of the other witnesses identified the truck as a bakery truck.

Fourth. By his pleadings copied above, appellee claimed ownership of the truck; injury to his truck; charged appellants with negligence in connection with the collision; and prayed for damages.

As a question of fact for the jury, the evidence identified appellee, U. C. Champagne, as the owner and operator of the truck. By his affirmative pleadings he claimed the truck. Mr. Hamilton went to appellee's bakery on the morning of the collision and in discussing the collision appellee told him that his driver was out "on the route." The driver, as a res gestae statement, told appellant Richmond that he was engaged in the course of his employment—this was the effect of his statement when he asked "for something to bandage his arm up so that he could go ahead and finish the deliveries." The court erred in instructing a verdict against appellants.

The judgment of the lower court is reversed and the cause remanded for a new trial.

Reversed and remanded.

### On Rehearing.

The lower court sustained appellee's exceptions to certain hypothetical questions propounded by appellant to an expert witness, and to the answers of the expert to these questions, on the ground that the questions were "hypothetical", were not based "upon a complete hypothesis", were "irrelevant and immaterial", etc. Without bringing forward these questions, it is our conclusion that they present issues subject to development by hypothetical questions; in view of the reversal, we do not review the evidence to ascertain whether or not they have support in the testimony. That point can be ruled upon by the trial court on the record as it may be presented to him.

Except in the respects stated, the motions for rehearing, by appellant and appellee, are overruled.